UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DANIELLE PARKER,

Plaintiff,

v.

COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC,

Defendant.

Case No. 15-cv-05673-TEH

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter came before this Court on May 22, 2017 for a hearing on Defendant's motion for summary judgment. After carefully considered the parties' written and oral arguments, the Court GRANTS Defendant's motion for summary judgment for the reasons set forth below.

**BACKGROUND**

Plaintiff Danielle Parker ("Plaintiff" or "Parker") was a nine-year employee at Defendant Comcast ("Defendant" or "Comcast") when she was terminated on May 20, 2013. Ex. 3 to Def.'s Mot. for Summ. J. ("Mot.") (ECF No. 50-5). She worked as a Sales Ops Consultant (formerly customer service representative) at various Comcast stores in the San Francisco Bay Area. Parker Dep. at 27:8-28:4 (Ex. A to Mot. (ECF No. 50-2)). Christine Jackai-Holloman ("Jackai") was Parker's direct supervisor. Parker and Jackai had a close working relationship and friendship: Parker testified at her deposition that Jackai was "like a mother" to her. Parker Dep. at 122:11-24 (ECF No. 50-2).

In the five months leading up to Parker's termination, Parker struggled with personal issues and had trouble keeping up with her work schedule. Jackai Dep. at 51:11-53:14 (Ex. B to Mot. (ECF No. 50-3)). Parker had to take care of her sick son, had ongoing problems with her boyfriend and with her son's father, and had to have her car

repossessed. *Id.* at 55:16-56:1. Jackai testified she "identified with [Parker] at the point of the struggles of a single parent having to worry about childcare" and "tried to work with her." *Id.* at 59:3-60:15, 53:3-56:1. Parker told Jackai that she was under a lot of stress, and Jackai noticed that Parker was indeed "very upset all the time" at work during the month of April 2013. *Id.* at 101:21, 136:7-137:20. Jackai claimed that she often chose to be lenient and not report Parker's absences. *Id.* at 62:14-63:21.

Parker did not show up for work for four consecutive scheduled workdays—April 30, May 2, May 3 and May 4, 2013. Ex. 3 to Mot. (ECF No. 50-5). Under Comcast's attendance policy, three or more consecutive days of no call/no show absences constitute voluntary termination. Exs. 5, 6 to Mot. (ECF No. 50-5). As a long-time Comcast employee, Parker was aware of the policy. Parker Dep. at 29:24-30:10 (ECF No. 50-2). Parker claims that on April 30, 2013 she called Jackai to ask if she could take the week off because she was being evicted and needed to move out of her apartment. *Id.* at 30:20-34:20. According to Parker, Jackai responded "Okay" but did not say anything else during the call. *Id.* at 34:25-35:9. Jackai denies speaking to Parker on April 30 or approving her absences. Jackai Dep. at 44:19-45:1 (ECF No. 50-3). To the contrary, Jackai noted in the termination paperwork that she tried to contact Parker during the days she was absent but could not reach her. Ex. 3 to Mot. (ECF No. 50-5). On May 6 or May 7, 2013, Jackai submitted Parker's termination paperwork to Comcast Human Resources lead Karen Pierce ("Pierce"). Pierce Dep. at 101:4-25 (Ex. C to Mot. (ECF No. 50-4). The paperwork indicated that Parker had accrued more than three no call/no show days. Ex. 3 to Mot. (ECF No. 50-5). Jackai testified at her deposition that the sole reason why she decided to terminate Parker was because Parker violated Comcast's attendance policy. Jackai Dep. at 83:7-11 (ECF No. 50-3).

In the late afternoon on May 6, 2013, the day she believed she was supposed to return to work, Parker went to see her primary care doctor, Dr. Hsu. Parker Dep. at 65:12-25 (ECF No. 50-2). Parker informed Dr. Hsu about her "life stressors" and told him that she had been off work for the last four days because she was moving out. Ex. 16 to Mot. at

2

1 (ECF No. 50-5); Hsu Dep. at 27:2-19 (Ex. D to Mot. (ECF No. 50-4)). Dr. Hsu gave her a note excusing her from work from May 6 to May 13, 2013, but noted that she could return to work at full capacity the following week. *Id*. at 30:10-32:3; Ex. 7 to Mot. (50-5). Parker claims that after her doctor's appointment on May 6, she went to Comcast's Richmond store to give her doctor's note to Jackai; because Jackai was not there, she left the note with Sherice Elliott, who was an assistant store manager at Comcast's Concord store and did not work in Richmond. Parker Dep. at 50:2-53:12 (ECF No. 50-2). It is undisputed that Parker never gave the note to Jackai. Jackai denies having any knowledge of the note. Jackai Dep. at 96:25-98:18 (ECF No. 50-3).

On May 8, 2013, Parker self-enrolled in Kaiser's Chemical Dependency Recovery Program ("CDRP") and was instructed to attend daily treatment for marijuana abuse. Parker Dep. at 101:5-12 (ECF No. 50-2); Ex. 18 to Mot. (ECF No. 50-5). Parker admits she never told Jackai or anyone else at Comcast that she had substance abuse issues or that she needed time off of work to obtain treatment. Parker Dep. at 108:25-110:10, 102:20-103:5 (ECF No. 50-2). Parker testified she told Jackai that she was arrested for a DUI once in April 20, 2013. Parker Dep. at 111:6-25 (ECF No. 50-2).

Comcast's human resources lead Pierce finalized Parker's termination paperwork on May 20, 2013. Ex. 3 to Mot. (ECF No. 50-5). Pierce admits that between May 7 and May 13, 2013 she became aware of two separate doctor's notes pertaining to Parker: one excusing her absence May 6-13 and another excusing her absence May 8-29. Ex. G to McFadden Decl. (ECF No. 61). Neither note stated a medical reason or excused Plaintiff's earlier no call/no show absences from April 30 to May 4, 2013. On May 13, Pierce emailed Director of Compliance Sarah Stofferahn to confirm that the doctors' notes had no impact on Jackai's recommendation to terminate Plaintiff for her previous unexcused absences. *Id*. Stofferahn asked if Plaintiff had "indicated that the 4/30, 5/2, 5/3 and 5/4 dates were related to her medical reasons for being off on 5/6 and the subsequent dates." *Id*. Pierce responded that she would "triple check[] with the manager." *Id*. Pierce testified at her deposition that she believed she confirmed with Jackai that Plaintiff's April 30 to

3

May 4, 2013 absences had nothing to do with a medical reason but she could not specifically recall the conversation. Pierce Dep. at 145:25-147:12 (ECF No. 50-4). Pierce testified that she approved Parker's termination because she had violated Comcast's attendance policy as explained by Jackai. *Id.* at 149:12-15.

On May 5, 2015, nearly two years after she was terminated, Parker filed the present lawsuit against Comcast. The case was removed to federal court on December 11, 2015. Notice of Removal (ECF No. 2). Plaintiff raises a single wrongful termination claim and seeks compensatory, general and special damages, as well as punitive damages against Comcast. Complaint (ECF No. 2). On April 17, 2017, Defendant filed the present motion for summary judgment and, in the alternative, motion for summary judgment on punitive damages. Mot. (ECF No. 50). Plaintiff responded (ECF No. 60) and Defendant timely replied (ECF No. 65).

**LEGAL STANDARD**

Summary judgment is appropriate when there is no genuine dispute as to material facts and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* The Court may not weigh the evidence and must view the evidence in the light most favorable to the nonmoving party. *Id.* at 255. The Court's inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

A party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find

4

other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). However, on an issue for which its opponents will have the burden of proof at trial, the moving party can prevail merely by "pointing out . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the moving party meets its initial burden, the burden shifts to the opposing party, who must "set out specific facts showing a genuine issue for trial" to defeat the motion. *Anderson*, 477 U.S. at 256.

**DISCUSSION**

Plaintiff asserts a single cause of action—a California tort claim for wrongful termination in violation of public policy. To succeed, Plaintiff must show that she was terminated for a reason that violates a fundamental public policy.[1] *Tameny v. Atlantic Richfield Co.*, 27 Cal.3d 167, 176 (1980). In her complaint and discovery responses, Plaintiff asserts three potential bases for wrongful termination: (1) she had a disability, which she identifies as anxiety and severe stress; (2) she was obtaining treatment for substance abuse, which Defendant concedes qualifies as a disability; and (3) she had complained about being shorted on her paychecks. Compl. ¶¶ 10-13. Defendant argues that it is entitled to summary judgment because Plaintiff has failed to raise a triable issue of material fact as to any of the three bases for termination.

**I.     Termination Due To Disability Discrimination**

Plaintiff claims that her termination violated public policy because Comcast discriminated against her on the basis of a disability or perceived disability. Compl. ¶ 10 (ECF No. 2). Courts evaluate such claims by applying a three-part burden-shifting test. *See*

---

[1] The California Fair Employment Practice Act, enacted in 1959 and recodified and included in the Fair Employment and Housing Act ("FEHA") in 1980, established that freedom from discrimination in employment on specific grounds, such as disability, is a civil right and that such discrimination violates public policy. *See Raine v. City of Burbank*, 136 Cal. App. 4th 1215, 1221 (Cal. Ct. App. 2006).

5

*Loggins v. Kaiser Permanente Int'l*, 151 Cal. App. 4th 1102, 1108-09 (2007) (three-stage burden-shifting test applies to claims for wrongful termination in violation of public policy). The employee carries the initial burden of establishing a prima facie case of discrimination. *Id.* If the employee meets her burden, a presumption of discrimination arises, and the burden shifts to the employer to produce evidence sufficient to raise a genuine issue of fact that its action was taken for a legitimate nondiscriminatory reason. *Id.* If the employer meets this burden, the presumption disappears, and the burden shifts back to the employee to show that the employer's proffered reason was pretextual. *Id.*

To establish a prima facie case of wrongful termination in violation of the public policy against disability discrimination, Plaintiff must show: (1) she suffers from a disability; (2) she is otherwise qualified to perform the duties of the job; and (3) she was subjected to an adverse action because of her disability. *Arteaga v. Brink's Inc.*, 163 Cal. App. 4th 327, 344, 355 (Cal. Ct. App. 2008) (holding that elements of a common law disability discrimination claim are the same as those of a FEHA claim). In dispute is the third prong of the prima facie case—whether Plaintiff was terminated "because of" her alleged disability, which consists of anxiety and substance abuse issues.[2]

### A. Plaintiff Has Failed to Produce Evidence that Defendant Knew About Plaintiff's Disability.

Defendant argues that Plaintiff's disability discrimination claim fails because there is no evidence that Comcast knew Plaintiff suffered from a disability. Evidence that the employer knew of the disability is indeed essential to establishing that the termination was an act of disability discrimination. "An adverse employment decision cannot be made

---

[2] The parties do not discuss the first two elements of the claim in their moving papers. At oral argument, Defendant claimed that Plaintiff has failed to produce evidence that she suffered from a disability. Plaintiff responded that she did not brief the first two elements of the claim because Defendant only disputed the third element. Since the Court finds that Plaintiff has not stated a prima facie case because there is no evidence of a causal link between the alleged disability and the termination, the question of the sufficiency of the evidence as to the other elements is irrelevant.

'because of' a disability when the disability is not known to the employer." *Brundage v. Hahn*, 57 Cal. App. 4th 228, 236 (Cal. Ct. App. 1997). "While knowledge of the disability can be inferred from the circumstances, knowledge will only be imputed to the employer when the fact of disability is the only reasonable interpretation of the known facts." *Id*. at 237.

The Court finds that Plaintiff has failed to meet her burden of establishing that decision makers at Comcast were on notice that Plaintiff had a disability. There is no evidence that either Jackai or Pierce were aware of Plaintiff's disability before they made their respective decisions to recommend and to finalize Plaintiff's termination. The evidence that Plaintiff proffers shows, at most, that Jackai knew Plaintiff was stressed and that Pierce knew that doctors had excused Plaintiff's absences for unspecified reasons *after* the unexplained no call/no show absences. Plaintiff attempts to argue that this evidence is sufficient to establish that she was terminated because of a disability; it is not.

First, Plaintiff suggests Jackai had actual knowledge of Plaintiff's disability through her observations of how stressed Plaintiff was in April 2013. But observations of stress do not amount to knowledge of a disability. Courts have repeatedly held that "[v]ague or conclusory statements revealing an unspecified capacity are not sufficient to put an employer on notice of its obligations" under the FEHA and under the ADA.[3] *Brundage*, 57 Cal. App. 4th at 236; *see e.g*., *Morisky v. Broward County*, 80 F.3d 445, 448 (11th Cir. 1998) (plaintiff's illiteracy and history of special education classes insufficient to put employer on notice of developmental disability). Plaintiff told Jackai she is stressed because of difficulties with her boyfriend, son and home environment. Jackai Dep. at 55:16-56:1 (ECF No. 50-3). As unfortunate and concerning as this information is, it does not inform Jackai and the employer Comcast that Plaintiff is suffering from a disability.

---

[3] Plaintiff did not state a claim under the FEHA because she missed the Act's one-year statute of limitations. Mot. at 12. Because Plaintiff's wrongful termination of public policy claim is premised on disability discrimination, the standards applied to claims under the FEHA are relevant here. Further, since FEHA's provisions relating to disability discrimination are based on the ADA and other federal law, decisions interpreting federal antidiscrimination laws are also instructive. *See Brundage*, 57 Cal. App. 4th at 235.

7

Without a diagnosis from a doctor or more specific information from Plaintiff, Jackai could not have been expected to determine that stress, even severe stress, amounts to clinical anxiety. *See Miller v. National Cas. Co.*, 61 F.3d 627, 629-630 (8th Cir. 1995) (absenteeism, claims of stress, and a relative's statement employee was "mentally falling apart" insufficient to put employer on notice of manic depression). The fact that at some point Plaintiff told Jackai about a panic attack she experienced in April 2011, over two years prior to Plaintiff's absences, could not have put Jackai on notice that Plaintiff suffered from an ongoing mental health condition. Parker Dep. at 112:1-114:22, 135:5-15 (ECF No. 50-2). Moreover, Plaintiff admits that during the conversation she allegedly had with Jackai on April 30, she never said she needed to take time off for a medical reason. The only reason Plaintiff herself gave for being absent from April 30 to May 4 was that she wanted "to get [her] stuff out" of her apartment because she was being evicted. *Id*. at 33:7-35:9. There is thus no evidence that Jackai had actual knowledge of Plaintiff's disability.

Second, Plaintiff argues that the two doctor's notes she submitted put Comcast on notice of Plaintiff's disability. The Court is not persuaded. Even if both Jackai and Pierce had seen the doctor's notes before they made their respective decisions to initiate and finalize Plaintiff's termination,[4] there was nothing in the doctor's notes to suggest that

---

[4] Jackai testified that she recommended Plaintiff's termination without ever having seen the doctor's notes. Jackai Dep. at 96:25-98:18, 160:20-162:25. Considering the timing between Plaintiff's doctor's visit and the termination recommendation, as well as the fact that Plaintiff admits she never gave her note to Jackai, the Court finds that the undisputed evidence supports Jackai's testimony. Similarly, the evidence supports Pierce's testimony that the sole reason why she finalized Plaintiff's termination was Plaintiff's violation of Comcast's attendance policy. It is undisputed that Pierce learned of Jackai's recommendation on May 6 or May 7. Ex. G to McFadden Decl. (ECF No. 61). It is also undisputed that between May 7 and 13, Pierce learned of Plaintiff's doctor's notes, which in her words "said nothing about the earlier no call no show[]" days. *Id*. On May 13, Pierce reached out to Stofferahn to confirm the notes did not provide a reason "why [Pierce] would not be able to proceed with the termination," implying that the decision to terminate had already been made. *Id*. "Evidence that a decision maker learned of a plaintiff's disability *after* deciding to take adverse employment action is not probative of whether the decision maker was aware of the plaintiff's disability when he or she made the termination." *Avila v. Continental Airlines, Inc*., 165 Cal. App. 4th 1237, 1251 (Cal. Ct. App. 2008).

Plaintiff might be suffering from a physical or mental health disability. Neither note listed a medical reason for Plaintiff's absences. Dr. Hsu's note from May 6 simply stated that Plaintiff "is placed off work from 5/6/2013 through 5/13/2013" and that she would return at full capacity on May 14. Ex. 7 to Mot. (ECF No. 50-5). Kaiser's note from May 8 simply stated that Plaintiff will be out of work from May 8 to May 29.[5] Pierce Dep. at 209:25-210:5 (ECF No. 50-4).

Courts have consistently held that doctor's notes which do not indicate the diagnosis of the condition, or specify any work restrictions or physical limitations, are insufficient to demonstrate that the employer had knowledge of an employee's disability. *See, e.g., Avila*, 165 Cal. App. 4th at 1248 (Kaiser forms excusing plaintiff from work for five days without listing reason or specifying restrictions insufficient to raise a triable issue as to employer's knowledge of a disability); *see Sandoval v. Mercedes-Benz USA, LLC*, 2012 WL 12884684, at *3 (C.D. Cal. May 29, 2012) (where plaintiff was hospitalized for three days and employer knew of hospitalization, but plaintiff did not inform his employer of any disability, the court held that knowledge of the disability could not be imputed to the employer). This is the case because "not every illness qualifies as [a] disability." *Mont-Ros v. City of West Miami*, 111 F. Supp. 2d 1338, 1358 (S.D. Fla. 2000) (applying ADA). Plaintiff could have sought preventive medical treatment or medical care for a temporary illness; in fact, Dr. Hsu's note that Plaintiff "was evaluated and deemed able to return at full capacity on 05/14/2013" strongly suggests a temporary sickness. Ex. 7 to Mot. (ECF No. 50-5). That Plaintiff suffered a disability was not "the only reasonable interpretation" of the information in the doctor's notes and, as a result, Defendant cannot be imputed with knowledge of disability in this case.

---

[5] Even though, according to Plaintiff, Kaiser's May 8 note was never produced in discovery, it is undisputed that the note did not specify that Plaintiff was receiving substance abuse treatment. Remington Dep. at 44:4-24 (Ex. D to Mot. (ECF No. 50-4)) (medical slips from CDRP do not indicate patient is seeking substance abuse treatment, only that patient needs medical care).

9

Third, Plaintiff suggests that even if Comcast did not know about the disability, the doctor's notes should have given them "notice of the need to further inquire into the situation." Opp'n at 8. To support her argument, Plaintiff relies on two provisions of the FEHA. Government Code Section 12940(m) requires an employer to provide a "reasonable accommodation for the known physical or mental disability of an applicant or employee." Section 12940(n) requires an employer "to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition." To state a claim for failure to make a reasonable accommodation, the employee must first give the employer notice of the disability and request accommodation. *See Raine*, 136 Cal. App. 4th at 1222 ("generally the employee bears the burden of giving the employer notice of the disability"); *see also Avila*, 165 Cal. App. 4th at 1252-1253 ("[T]he employee can't expect the employer to read his mind and know he secretly wanted a particular accommodation and sue the employer for not providing it.") Since Plaintiff did not inform her supervisor Jackai or any other decision maker at Comcast that she suffered from a disability, she cannot state a claim for failure to accommodate.

Plaintiff argues that even though she did not personally make a request for accommodation, the doctor's notes themselves constitute such a request. Opp'n at 8. Plaintiff's reliance on *Faust v. California Portland Cement Co.* for this proposition is unavailing. 150 Cal. App. 4th 864 (Cal. Ct. App. 2007). In *Faust*, the Court of Appeal held that the employer was on notice of the plaintiff's disability when a chiropractor wrote to the employer that the plaintiff was "unable to perform regular job duties from 3-31-03 to 5-1-03." *Id*. at 887. Unlike the note in *Faust*, the doctor's notes here did not provide a recommendation for therapy and tests and did not specify that Plaintiff was unable to perform her duties upon return to work. Comcast could not have known that Plaintiff suffered from anything but perhaps a temporary illness. Further, the doctor's notes here did not cover Plaintiff's absences in the relevant period of April 30 to May 4, nor was there

10

any evidence that a medical reason applied to the earlier absences. By Plaintiff's own admission, her absences during that period were because she needed to move, not because she was seeking medical treatment. Parker Dep. at 33:7-35:9 (ECF No. 50-2).

In sum, the uncontroverted evidence shows that neither Jackai, nor Pierce was aware that Plaintiff suffered from a disability when they terminated her employment. Given the nature of the two doctor's notes and Plaintiff's own testimony, the Court finds no basis to impute knowledge to the Defendant of Plaintiff's disability.

### B. Plaintiff Has Failed to Produce Evidence of Discriminatory Animus.

In addition to the absence of evidence that Defendant knew about Plaintiff's disability, there is also a lack of evidence that Jackai or anyone else at Comcast harbored discriminatory intent. Plaintiff must present facts showing that "it is more likely than not that the employer's actions were based on a prohibited discriminatory criterion," and not a legitimate employment decision. *Harris v. City of Santa Monica*, 56 Cal. 4th 203, 214 (Cal. 2013) (citing *Guz v. Bechtel National Inc.*, 24 Cal. 4th 317, 358 (Cal. 2000)); *see also Arteaga*, 163 Cal. App. 4th at 342 ("the plaintiff must prove the ultimate fact that the defendant engaged in intentional discrimination").

Plaintiff relies on two facts as evidence of animus: (1) that Defendant brought up Plaintiff's past attendance; and (2) that, when answering a question about Plaintiff's termination, Jackai spoke about Plaintiff bringing "her personal issues to work".[6] Opp'n at 7. Reading the facts in a light favorable to Plaintiff, the Court is unable to find any actual evidence of discriminatory animus. *See Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983) (bare assertions of "discriminatory motivation and intent ... are inadequate,

---

[6]Reading Jackai's testimony in context directly contradicts Plaintiff's argument. Jackai Dep. at 82:12-83:11 (ECF No. 50-3) (Q: Other than her attendance issues, were there any other reason why you terminated Ms. Parker? A: It's attendance, and --- and also with bringing the personal issues to work, *that interfered with her being able to be there on time*. … Q: Are there any reasons other than the reasons related to her attendance that you terminate Ms. Parker? A: No. I never disliked Danielle at all. She had a great personality.) (emphasis added).

11

without substantial factual evidence, to raise an issue precluding summary judgment.") The undisputed evidence establishes that Plaintiff and Jackai had a close working relationship. Plaintiff testified that Jackai was "like a mother" to her. Parker Dep. at 122:11-24 (ECF No. 50-2). Jackai confirmed that she valued Plaintiff's work and saw her as a good salesperson. Jackai Dep. at 59:3-60:15 (ECF No. 50-3) ("when she performed at work, her performance on the floor was excellent.") Most importantly, Plaintiff herself stated that she could not recall Jackai ever showing any ill will toward her. Parker Dep. at 129:13-25 (ECF No. 50-2). Similarly, there is no evidence that the only other person responsible for Plaintiff's termination, Karen Pierce, harbored discriminatory intent. Pierce had no personal relationship with Plaintiff, had only seen her a few times before, and, as Plaintiff admitted, had never showed ill will toward her. Parker Dep. at 130:2-132:20 (ECF No. 50-2).

Lastly, Plaintiff argues that there is a factual dispute over whether Jackai approved Plaintiff's absences between April 30 and May 4, 2013 and thus whether Plaintiff actually violated Defendant's attendance policy. Opp'n at 6. This factual dispute is not material to Plaintiff's disability discrimination claim and does not defeat summary judgment. *See Hersant v. Dep't of Soc. Servs.*, 57 Cal. App. 4th 997, 1005 (Cal. Ct. App. 1997) (a factual dispute as to whether the employer's decision was wrong, imprudent or mistaken does not defeat summary judgment). Plaintiff does not claim that Jackai approved her absences for a medical reason or for any reason related to disability or substance abuse treatment. Even accepting Plaintiff's version of events as true, Plaintiff has no evidence that Jackai discriminated against her or was even aware of her disability. Plaintiff's own account is that she needed the time between April 30 and May 4 to move. At most, the evidence shows that Jackai's decision to terminate Plaintiff was a result of a misunderstanding between the two Comcast employees, not a result of unlawful discrimination. *See Guz*, 24 Cal. 4th at 358 ("if nondiscriminatory, [the employer's] true reasons need not necessarily have been wise or correct.").

12

1   Accordingly, the Court finds that Plaintiff has failed to raise a triable issue of fact
2   that she was terminated because of a disability. Because Plaintiff is unable to satisfy her
3   initial burden of making a prima facie case of disability discrimination related to her
4   anxiety, the Court does not reach the questions of whether Comcast had a legitimate reason
5   for terminating Plaintiff and whether Plaintiff refuted that reason with evidence of pretext.

## II.     Termination Due To Substance Abuse Treatment

Plaintiff also claims that she was wrongfully terminated because she received substance abuse treatment. Defendant admits that such treatment qualifies as a disability but argues that, once again, Comcast had no knowledge of the treatment Plaintiff sought.

It is undisputed that Plaintiff self-enrolled in Kaiser's Chemical Dependency Recovery Program (CDRP) on May 8. Ex. 18 to Mot. (ECF No. 50-5). Plaintiff admits that she never told anyone at Comcast that she had substance abuse issues or that she was receiving treatment. Parker Dep. at 94:12-19; 108:25-111:8 (ECF No. 50-2). She claims, however, that because Plaintiff told Jackai that she was arrested for a DUI on April 20, 2013, Comcast was on notice that Plaintiff may need rehabilitation for alcohol abuse. *Id*. at 111:9-25. Neither the law nor common sense support that inference. A single arrest for a DUI does not mean that a person is suffering from alcohol abuse and is thus insufficient to impute knowledge of a disability. Pierce admitted that she had become aware of a doctor's note excusing Plaintiff from work between May 8 and May 29, but testified she did now know Plaintiff was enrolled in CDRP or had any reason to suspect that the excused absences were related to substance abuse, or that they were connected to Plaintiff's earlier no call/no show absences. Pierce Dep. at 98:12-14; 103:20-104:22, 105:4-9; Remington Dep. at 44:4-24 (ECF No. 50-4) (medical slips from CDRP do not indicate patient is seeking substance abuse treatment, only that patient needs medical care).

The Court finds that Plaintiff has not met her burden of showing that Defendant knew of Plaintiff's substance abuse treatment and could thus terminate Plaintiff because of it. Plaintiff's second basis for wrongful termination is also unsupported by evidence and

13

1  cannot survive summary judgment.

### III. Termination Due to Paycheck Complaints

Lastly, Plaintiff alleges she was terminated for having complained about "being shorted on her paycheck." Compl. ¶¶ 10, 11, 13. In discovery, Plaintiff did not produce any evidence that Jackai knew Plaintiff had made complaints about her paychecks, apart from common complaints by many employees about a new time-entry system. Jackai Dep. at 103:7-105:10, 117:8-120:1 (ECF No. 50-3). Similarly, Pierce had no knowledge of any complaints made by Plaintiff and no reason to believe that Jackai recommended Plaintiff's termination for any reason other than the violation of Comcast's attendance policy. Pierce Dep. at 65:13-18; 216:10-217:10 (ECF No. 50-2).

Given Plaintiff's failure to mention wage retaliation in her Opposition, the Court determines Plaintiff has conceded she has no evidence to support her claim of wrongful termination based on wage complaints. *See Stop the Beach Renourishment, Inc. v. Florida Dep't of Envtl. Prot.*, 560 U.S. 702, 729 (2010) (failure to raise arguments in opposition resulted in waiver of those arguments) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 815-16 (1985)). Plaintiff's last basis for wrongful termination fails as a matter of law.

### CONCLUSION

For the foregoing reasons, the Court finds that the evidence is simply insufficient to establish a prima facie case of disability discrimination. Plaintiff's wrongful termination claim fails as a matter of law, and Defendant's motion for summary judgment is therefore GRANTED. The clerk is directed to enter judgment and close the case.

**IT IS SO ORDERED.**

Dated: 05/25/17

_____
THELTON E. HENDERSON
United States District Judge